```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
_____
                               )
UNITED STATES OF AMERICA       )
                               )
         v.                    )    Criminal Action No. 12-266 (RWR)
                               )
DWIGHT KNOWLES and             )
ORAL GEORGE THOMPSON,          )
                               )
         Defendants.           )
_____)
```

## MEMORANDUM OPINION AND ORDER

Defendants Dwight Knowles and Oral George Thompson were indicted for conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine on board an aircraft registered in the United States. Knowles and Thompson move to suppress audio recordings of telephone conversations allegedly among the co-defendants and others in Colombia and the Bahamas, claiming that the government will be unable to authenticate the recordings or establish their contents as admissible co-conspirator statements, and that government agents were joint venturers in improperly procuring the recordings. The government opposes. Because the defendants' challenges to authenticity and admissibility are premature, and the defendants have shown no basis for finding a joint venture in improper governmental conduct that would justify invoking the court's supervisory power to suppress the recordings, the defendants' motion will be denied.

BACKGROUND

Knowles is a citizen of the Commonwealth of the Bahamas, and Thompson is a citizen of Jamaica. Govt. Resp. in Oppn. to Def. Knowles' Mot. for the Suppression of Audio Recording Evidence ("Govt. Oppn."), ECF No. 90, at 2. They are charged with a narcotics conspiracy involving U.S.-registered aircraft, in violation of 18 U.S.C. § 2, and 21 U.S.C. §§ 959(b), 960, and 963. Both Knowles and Thompson resided in Colombia during the life of the alleged conspiracy. Govt. Oppn. at 2. The government seeks to introduce at trial as evidence of the conspiracy 180 recorded telephone conversations and text-messages intercepted by the Colombian National Police ("CNP"), the Office of the Attorney General of Colombia, and the Royal Bahamas Police Force ("RBPF"). Id. at 2-3. The government expects to authenticate this evidence through testimony from "law enforcement officials from Colombia, an engineer from the Colombian interception system. . ., law enforcement officials from the Bahamas, and the Defendant coconspirators." Id. The government claims that "[a]ll of the interceptions conducted by the CNP were authorized in accordance with the laws of the Republic of Colombia and all interceptions conducted by the RBPF were authorized according to the laws of the Commonwealth of the Bahamas." Id. at 3.

Knowles and Thompson move to suppress the wiretap evidence. They argue that the government will be unable to authenticate the recordings at trial; the recordings are inadmissible hearsay; United States law enforcement engaged in an impermissible joint venture with foreign law enforcement; and the Court should invoke its supervisory powers to suppress the recordings.  Mot. to Suppress Audio Recording Evid. ("Mot."), ECF No. 84, at 2-4.

## DISCUSSION

I.   AUTHENTICITY OF AUDIO RECORDINGS

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901(a).  "Tapes may be authenticated 'by testimony describing the process or system that created the tape' or 'by testimony from parties to the conversation affirming that the tapes contained an accurate record of what was said.'"  United States v. Strothers, 77 F.3d 1389, 1392 (D.C. Cir. 1996) (quoting United States v. Dale, 991 F.2d 819, 843 (D.C. Cir. 1993)).  The government can satisfy its burden to authenticate tapes where an official testifies to the office's protocols and testifies that those protocols were followed in making the tapes in question.  United States v. Celis, 608 F.3d 818, 842 (2010).  "To authenticate audio

recordings, the government must prove that, 'as a matter of reasonable probability, possibilities of misidentification and adulteration have been eliminated.'" Id. (quoting United States v. White, 116 F.3d 903, 920-21 (D.C. Cir. 1997)).

The defendants predict that "the government will be unable to authenticate the recorded calls, and unable to connect the recordings to the charged conspiracy." Mot. at 2. The defendants insist "that the recordings were obtained without probable cause affidavits that would contain the specificity a U.S. Court is accustomed to, and are devoid of any strict judicial oversight that is a prerequisite to a federal Title III intercept order. . . . Therefore, any effort by the government to support admission of the audio recordings is bound to rely upon the credibility of foreign law enforcement personnel and/or [Drug Enforcement Agency ('DEA')] Agents." Id. at 2-3.

The government counters that it intends to present witnesses that will be able to properly authenticate the audio recordings. Govt. Oppn. at 4 ("At trial, the Government plans to call law enforcement officials from Colombia, and the Bahamas, as well as cooperating co-conspirator witnesses to provide a sufficient foundation under Rule 901(a).").[1]

---

[1] The government further insists that Title III provides no basis for suppressing the recordings because that statute does not apply to wiretaps conducted by foreign governments outside the United States. Govt. Resp. in Oppn. to Def. Knowles' Mot.

The parties, then, dispute whether the government will be able to carry its burden in authenticating the audio recordings at trial.  Suppressing the audio recordings simply because the defendants speculate the government will not be able to sufficiently authenticate the recordings would be premature.  Accordingly, whether the government has met its burden in authenticating the audio recordings is an issue to be determined at trial, after the government attempts to authenticate the evidence.

II.  ADMISSIBILITY OF ALLEGED CO-CONSPIRATOR STATEMENTS

A statement that is offered by the government against a defendant and "was made by the [defendant's] coconspirator during and in furtherance of the conspiracy" is not inadmissible hearsay.  Fed. R. Evid. 801(d)(2)(E), 802.

> Before admitting a co-conspirator's statement over an objection that it does not qualify under Rule 801(d)(2)(E), a court must be satisfied that the statement actually falls within the definition of the Rule.  There must be evidence that there was a conspiracy involving the declarant and the nonoffering party, and that the statement was made "during the course and in furtherance of the conspiracy."

---

for the Suppression of Audio Recording Evidence, ECF No. 90, at 5 (citations omitted).  However, the defendants do not argue that Title III noncompliance is a *basis* for suppressing the audio recordings; instead, the defendants' assertion that the wiretaps do not comply with Title III is the defendants' basis for speculating that the government "is bound to rely" upon the testimony of foreign law enforcement officers and DEA agents when authenticating the wiretaps.  Mot. to Suppress Audio Recording Evid., ECF No. 84, at 2-3.

Bourjaily v. United States, 483 U.S. 171, 175 (1987)(quoting Fed. R. Evid. 801(d)(2)(E)).  "The Court may make this determination either before trial after an evidentiary hearing, or may let the trial proceed at the government's risk that it will not be able to carry its burden, thereby requiring the grant of a mistrial or the striking of already admitted evidence, if it fails to do so."  United States v. Safavian, 435 F. Supp. 2d 36, 46 (D.D.C. 2006) (citing United States v. Slade, 627 F.2d 293, 306-07 (D.C. Cir. 1980) (citation omitted)); see also United States v. Gewin, 471 F.3d 197, 201 (D.C. Cir. 2006) ("A court can preliminarily admit hearsay statements of co-conspirators, subject to connection through proof of conspiracy.") (citation omitted).  "Standard practice in this district is to allow the government to admit coconspirator statements conditionally, subject to connection by the government at trial."  United States v. Larrahondo, 885 F. Supp. 2d 209, 220 (D.D.C. 2012) (citing United States v. Jones, 451 F. Supp. 2d 71, 84 (D.D.C. 2006), rev'd on other grounds, 615 F.3d 544 (D.C. Cir. 2010), aff'd, 132 S. Ct. 945 (2012)).

   Knowles and Thompson assert that the audio recordings are hearsay and inadmissible "without being connected up to the alleged conspiracy and found by the court, by independent evidence, to have been made in furtherance of and during the alleged conspiracy."  Mot. at 3 (citing Slade, 627 F.2d at

306-07 and United States v. Jackson, 627 F.2d 1198, 1218 (D.C. Cir. 1980)) (stating that the "'better practice' is to secure proof of the conspiracy adequate to sustain admission of the hearsay before the hearsay itself is received").

Knowles' and Thompson's reliance on Jackson is misplaced. First, Jackson was decided seven years before Bourjaily was and thus does not speak to the requirements the Supreme Court articulated in Bourjaily.  Second, the defendants omit the Jackson court's subsequent discussion of the practical difficulties facing the better practice and the court's ultimate conclusion that

> many times witnesses are in possession of both hearsay testimony of co-conspirators and evidence that independently tends to prove the existence of the conspiracy.  Given the myriad of difficulties that surround the availability of witnesses, it is just impractical in many cases for a court to comply strictly with the preferred order of proof by taking the testimony of such witnesses piecemeal, waiting until a conspiracy is fully proved by independent evidence, and then recalling from their normal pursuits, those who testify to hearsay declarations of co-conspirators.
>
> As a concession to such practical impediments that arise during trial, the court is vested with considerable discretion to admit particular items of evidence "subject to connection."

Jackson, 627 F.2d at 1218 (internal citation omitted).  It is a standard practice to admit co-conspirator statements conditionally, subject to connection to the conspiracy by the government at trial.  The government proffers that it intends to

present witnesses that will be able to properly authenticate the audio recordings.  Govt. Oppn. at 4 ("At trial, the Government plans to call law enforcement officials from Colombia, and the Bahamas, as well as cooperating co-conspirator witnesses to provide a sufficient foundation under Rule 901(a).").  If the government does not make a sufficient connection, it runs the substantial risks of which Safavian warned.  Accordingly, the defendants' argument that the audio recordings are inadmissible hearsay is one that can be raised at trial.

III. JOINT VENTURE DOCTRINE AND SHOCK THE CONSCIENCE TEST

The Fourth Amendment generally requires exclusion of evidence seized unreasonably or without a valid warrant.  "The Fourth Amendment and its exclusionary rule do not generally apply to the acts of foreign officials," except under two very limited circumstances involving either the joint venture doctrine or the shock the conscience test.  United States v. Ferguson, 508 F. Supp. 2d 1, 4 (D.D.C. 2007) (citing United States v. Barona, 56 F.3d 1087, 1091 (9th Cir. 1995)).  First, a court may assess warrantless or unreasonable seizures and invoke the exclusionary rule under the "joint venture doctrine . . . [']if American law enforcement officials substantially participated in the search or if the foreign officials conducting the search were actually acting as agents for their American counterparts.'"  Id. (quoting United States v. Behety,

32 F.3d 503, 510-11 (11th Cir. 1994) and citing United States v. Peterson, 812 F.2d 486, 490 (9th Cir. 1987); United States v. Delaplane, 778 F.2d 570, 573 (10th Cir. 1985); and United States v. Morrow, 537 F.2d 120, 139 (5th Cir. 1976)).  Second, a court may require exclusion of the evidence if "the circumstances of the foreign search are so extreme 'that they shock the [judicial] conscience[.]'"  Id. (quoting Barona, 56 F.3d at 1091) (alteration in Ferguson).  See also Larrahondo, 885 F. Supp. 2d at 220-21 (discussing both exceptions but finding that neither applied); United States v. Delaema, 583 F. Supp. 2d 104, 107 (D.D.C. 2008) (discussing existence of both exceptions).  The defendants move to suppress the audio recordings under these two exceptions.  Mot. at 3.

    A.    Joint Venture Doctrine

The joint-venture doctrine "is based solely on the Fourth Amendment[.]"  United States v. Bourdet, 477 F. Supp. 2d 164, 176 (D.D.C. 2007) (quoting Barona, 56 F.3d at 1093) (internal quotation mark omitted).  But "[t]he incantation of the words 'joint venture' cannot confer upon defendants Fourth Amendment rights that they do not otherwise possess."  Id.  Defendants must "show that they are among the class of persons that the Fourth Amendment was meant to protect."  Id. (quoting Barona, 56 F.3d at 1093) (internal quotation mark omitted).  Non-resident aliens lacking "voluntary connection to the United States" are

not entitled to Fourth Amendment protections "with respect to foreign actions by foreign officials." Larrahondo, 885 F. Supp. 2d. at 221 (quoting Bourdet, 477 F. Supp. 2d. at 176-77 (citing United States v. Verdugo-Urquidez, 494 U.S. 259, 274-75 (1990))).

The defendants claim that "the purpose behind the production of the audio recordings was to obtain information to support a United States federal narcotics prosecution. Accordingly, the audio recordings in this case can best be described as the product of a 'joint venture' between the DEA and foreign law enforcement." Mot. at 3. The defendants also acknowledge, though, that "the Fourth Amendment does not apply to non-resident aliens in foreign territory[.]" Mot. at 3 (citing Verdugo-Urquidez, 494 U.S. at 259). The defendants are neither citizens nor residents of the United States, Govt. at 2, and neither has shown any qualifying voluntary connection to the United States. Accordingly, the joint venture doctrine exception does not entitle the defendants to seek to suppress the recordings, regardless of how they were procured.

B.  Shock the Conscience

"'[S]ubstantive due process' prevents the government from engaging in conduct that 'shocks the conscience.'" United States v. Salerno, 481 U.S. 739, 746 (1987) (quoting Rochin v. California, 342 U.S. 165, 172 (1952)). Where evidence is

"gathered in a manner shocking the conscience," a court may invoke its supervisory powers to suppress the evidence. Larrahondo, 885 F. Supp. at 221 (citing Delaema, 583 F. Supp. 2d at 106 (citing United States v. Mitro, 880 F. 2d 1480, 1483 n.4 (1st Cir. 1989) (noting "there is some debate" on this point))).

The Supreme Court first articulated the "shock the conscience" standard in Rochin.  There, sheriff's deputies unlawfully broke into the defendant's private bedroom, jumped upon him to try to pry open his mouth and extract suspected narcotics capsules he tried to secrete there, and ultimately directed a doctor to force a tube into his stomach that made him vomit up the capsules.  Rochin, 342 U.S. at 166, 172.  The Supreme Court reversed a judgment affirming the defendant's conviction because "the proceedings by which this conviction was obtained do more than offend some fastidious squeamishness or private sentimentalism about combatting crime too energetically. This is conduct that shocks the conscience."  Id.  Rochin found this conduct "too close to the rack and the screw to permit of constitutional differentiation."  Id.

Though neither the Supreme Court nor the D.C. Circuit has articulated a clear test to use to evaluate whether government conduct shocks the conscience, the Supreme Court and other circuits emphasize the high bar such conduct must satisfy.  See United States v. Getto, 729 F.3d 221, 228 (2d Cir. 2013)

("[C]onduct does not shock the judicial conscience when it is 'simply illegal'; rather, it must be 'egregious.'") (citation omitted); Mitro, 880 F.2d at 1483-84 ("Circumstances that will shock the conscience are limited to conduct that 'not only violates U.S. notions of due process, but also violates fundamental international norms of decency.'") (citation omitted); United States v. Emmanuel, 565 F.3d 1324, 1331 (11th Cir. 2009) (The shock the conscience exception "is meant to protect against conduct that violates fundamental international norms of decency.") (citing Mitro, 880 at 1483).

Thompson has filed in support of the motion to suppress two letters to try to cast doubt on whether the wiretaps in this case were obtained in accordance with Colombian law.  One letter is from the Chief Prosecutor of the Antinarcotics and Maritime Interdiction Unit of the National Prosecutor General of the Colombian Nation to the Office of the Director of International Affairs for the National Prosecutor General of the Colombian Nation ("Director of International Affairs"), and another is from the Director of International Affairs to Thompson.  Def. Thompson's Notice of Filing ("Notice"), Ex. 1, ECF No. 104, at 2; Notice, Ex. 2, at 2.  The letters state that the Antinarcotics and Marine Interdiction Unit of the National Prosecutor General of the Colombian Nation did not engage in any "diligence" with respect to Thompson.  Notice, Ex. 1, at 1;

Notice, Ex. 2, at 2.  Knowles has filed in support of the motion to suppress a letter from the Director of Fiscalía Nacional Especializada Antinarcóticos y Lavado de Activos, but has not provided an English translation of this letter.  Letter Filed by Dwight Knowles, ECF No. 115.

The government responded by filing what it purports are copies of "Colombian and Bahamian orders that authorized the interception of the audio recordings in this case[,]"  Govt.'s Supp. Filing of Exhibits in Oppn. to Defs.' Mot. for the Suppression of Audio Recording Evidence, ECF No. 103, at 2, and Colombian "judicial orders," id. at 3.  The filings in part appear to reveal orders from the "Colombian Fiscalía authoriz[ing] the Colombian National Police to intercept and monitor six phone numbers involving the [d]efendants[:] 301-293-8897, 300-312-3438, 301-615-7360, 300-239-4551, 300-532-0756, and 300-752-1443."  Id.  The government claims that all interceptions were reviewed by a Colombian judge.  Id. at 3-4.

If "[Colombian] courts were involved and purported to authorize the wiretaps[,]" the interceptions "do[] not come close to requiring the invocation of this [shock the conscience] exception."  Barona, 56 F.3d at 1091 (noting that courts "may employ [their] supervisory powers when absolutely necessary to preserve the integrity of the criminal justice system").  But even if the defendants' letters show that the recordings were

not lawfully authorized by the Colombian anti-narcotics and marine interdiction unit, and the wiretapping violated Colombian law, wiretapping does not shock the conscience simply because it was unauthorized.  Id. (citing United States v. Peterson, et al., 812 F.2d 486, 491 (9th Cir. 1987) (where both parties "concede[d] judicial authorization was neither sought nor received.")); see also Getto, 729 F.3d at 228 (holding "simply illegal" acts do not shock the conscience) (citation omitted). In Getto, the Second Circuit held that the Israeli National Police's conduct did not shock the conscience even assuming defendant correctly alleged that the police performed a warrantless search and then omitted the fact of this search on its warrant application for a subsequent search.  729 F.3d at 228.

Knowles and Thompson also claim "that the United States government has recently revealed, and admitted gathering, a vast amount of data including telephone usage and electronic messaging.  The data has been described as knowing no bounds with regard to person, entity, governmental agency, and/or national boundary." Mot. at 4.  The defendants cite no precedent reflecting that such a claim can trigger the Rochin exception.  In Larrahondo, the defendant "allege[d] only that Colombian law enforcement monitored the telephone lines at issue for a long period of time and captured an enormous number of

calls.  Th[e] Court [did] not believe that this allegation rises to the level of shocking the conscience."  885 F. Supp. at 221-22.  Actions by U.S. law enforcement officials to gather large amounts of data in Colombia did not shock the judicial conscience in <u>Larrahondo</u>, and little has been presented that should trigger a different conclusion here.

## CONCLUSION AND ORDER

Whether the audio recording evidence is properly authenticated is a matter to be decided at trial.  Neither the joint venture doctrine nor the shock the conscience test justifies the court's invocation of its supervisory powers to suppress the wiretaps in this case.  Therefore, it is hereby

ORDERED that the defendants' motion [84] to suppress audio recording evidence be, and hereby is, DENIED.

SIGNED this 30th day of December, 2015.

_____/s/_____
RICHARD W. ROBERTS
Chief Judge