UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DWIGHT WARREN KNOWLES (2),<br>     a.k.a. "Arizona" and<br><br>ORAL GEORGE THOMPSON (3),<br>     a.k.a. "Chad,"<br><br>Defendants. | CRIM. NO. 1:12-cr-266-02, -03<br>(RWR) |

Government's Memorandum in Opposition to Defendant Oral George
Thompson's Motion to Dismiss the Indictment

The United States of America, by and through the undersigned, files this Opposition to Defendant Oral George Thompson's Motion to Dismiss the Indictment (ECF No. 120). The statute at issue, 21 U.S.C. § 959(b) (2014), is unambiguously intended to apply extraterritorially to proscribe Thompson's alleged conduct. This extraterritorial application of Section 959(b) comports with due process and principles of international law. Accordingly, Thompson's motion must be denied.

I.      BACKGROUND

Defendants Thompson and Knowles, along with three other co-defendants, were indicted in criminal case number 12-cr-266 (RWR) on December 12, 2012, by a federal grand jury in the District of Columbia. The indictment provided that, from in or around May 2011, and continuing thereafter and including December 12, 2012, in the Bahamas, Colombia, Haiti, Venezuela, the Dominican Republic, and elsewhere, Defendants Thompson, Knowles, and their co-defendants conspired to distribute, and possess with intent to distribute, five kilograms or more of cocaine on

board an aircraft owned by a United States citizen and registered in the United States, and aiding and abetting, in violation of 21 U.S.C. §§ 959(b), 960, and 963, and 18 U.S.C. § 2.

The Government intends to introduce evidence at trial to prove that, from on or about at least May 2011 to December 12, 2012, Defendants Thompson and Knowles, while based in Santa Marta, Colombia, entered into an agreement with various co-conspirators to include, but not limited to, pilot Dario Davis and drug-trafficker Trevor Ferguson, both based in Nassau, Bahamas, to transport large quantities of cocaine.  Defendant Thompson used his contacts in Colombia and Venezuela—to include cocaine brokers, investors, sources of supply, and members of drug trafficking organizations—to attempt to arrange various cocaine transportation transactions, including the transportation of large quantities of cocaine via boat, aircraft, and shipping containers in furtherance of this conspiracy.  As part of the conspiracy, Defendants Thompson and Knowles worked together to attempt to utilize various aircraft to traffic cocaine, including U.S. registered and foreign registered aircraft, primarily located in the United States, the Bahamas, the Dominican Republic, Panama, and Belize.  One aircraft, among others, that the Defendants conspired to use to traffic narcotics was a U.S. registered aircraft with tail number N157PA that was ultimately detained and seized in Haiti, resulting in the arrest of Dario Davis and Trevor Ferguson.

The statute that Thompson was charged under, Section 959(b), was enacted as part of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (DAPCA) and provides as follows:

### § 959. Possession, manufacture, or distribution of controlled substance

(a) Manufacture or distribution for purpose of unlawful importation

It shall be unlawful for any person to manufacture or distribute a controlled substance in schedule I or II or flunitrazepam or listed chemical--

(1) intending that such substance or chemical will be unlawfully imported into the

United States or into waters within a distance of 12 miles of the coast of the United

States; or

(2) knowing that such substance or chemical will be unlawfully imported into the

United States or into waters within a distance of 12 miles of the coast of the United

States.

(b) Possession, manufacture, or distribution by person on board aircraft

It shall be unlawful for any United States citizen on board any aircraft, or any person

on board an aircraft owned by a United States citizen or registered in the United

States, to--

(1) manufacture or distribute a controlled substance or listed chemical; or

(2) possess a controlled substance or listed chemical with intent to distribute.

(c) Acts committed outside territorial jurisdiction of United States; venue

This section is intended to reach acts of manufacture or distribution committed

outside the territorial jurisdiction of the United States. Any person who violates this

section shall be tried in the United States district court at the point of entry where

such person enters the United States, or in the United States District Court for the

District of Columbia.

## II.    ARGUMENT

### A.    Congress Clearly Intended for Section 959(b) to Apply Extraterritorially

Thompson does not dispute that Congress intended for Section 959(b) to have

extraterritorial effect.  Congress has the authority to criminalize extraterritorial activity if its intent

to do so is clear.  *United States v. Bowman*, 260 U.S. 94, 98-99 (1922).  Section 959(c) provides,

"This section is intended to reach acts of manufacture or distribution committed outside the territorial jurisdiction of the United States," and goes on to specify the venue for trying violators of the statute.  Section 959(c) thus makes clear that Section 959(b) applies to criminalize certain conduct regardless of where the offense conduct occurs.  *United States v. Malago*, No. 12-20031-CR, 2012 WL 3962901, at *2-4 (S.D. Fla., Sept. 11, 2012) (concluding that Congress intended for the provision of Section 959(b) at issue in the instant case to apply extraterritorially).  Other courts have recognized the extraterritorial nature of Section 959.  *See United States v. Baker*, 609 F.2d 134, 138 (5th Cir. 1980) (identifying Section 959 as an example of how DAPCA "contains a variety of provisions that explicitly cover acts occurring wholly outside the territorial United States"); *United States v. Lopez-Vanegas*, 493 F.3d 1305, 1313 (11th Cir. 2007) (identifying Section 959 as an example of how Congress "has shown it is capable of addressing acts involving controlled substances occurring outside of the United States"); *see also United States v. Ballestas*, 795 F.3d 138, 144 (D.C. Cir. 2015) (holding that a provision of the Maritime Drug Law Enforcement Act (MDLEA) had "straightforward" and "clear" extraterritorial effect because the statute stated that the provision in question "applies even though the act is committed outside the territorial jurisdiction of the United States").

Notably, Section 959(b) does not limit its application only to U.S. registered or owned aircraft that travel within or to/from the United States.  The statutory language "*any* person on board an aircraft owned by a United States citizen or registered in the United States" (emphasis added) signifies that Congress intended to criminalize certain conduct regardless of location so long as the aircraft on which the conduct occurs is U.S.-registered or owned.  Similarly, in *United States v. Lawrence*, the Court of Appeals for the Fifth Circuit examined the first clause of Section 959(b) that makes it "unlawful for *any* United States citizen on board *any* aircraft" (emphasis

added) to partake in drug trafficking activities.  727 F.2d 386, 392 (5th Cir. 2013).  The Fifth

Circuit rejected the appellants' argument that that provision should be read to refer only to aircraft

traveling within or to/from the United States.  The Court noted the broad statutory language and

reasoned that, "given the nature of the international drug trade, possession of an illicit substance

aboard an aircraft will often involve travel between foreign nations and consequently, implicates

extraterritoriality." *Id.*[1]  This reasoning applies equally to the provision of Section 959(b) at issue

in the present case, as U.S. registered or owned aircraft that are involved in the international drug

trade will often travel between foreign nations and not necessarily just within or to/from the United

States.

Having established that Congress unambiguously intended for Section 959(b) to have

extraterritorial effect, this memorandum explains why the extraterritorial application of Section

959(b) comports with due process and principles of international law.

**B.**      **The Extraterritorial Application of Section 959(b) Comports with Due Process**

Thompson contends that application of Section 959(b) violates the Due Process Clause of

the Fifth Amendment.  Contrary to Thompson's assertions, Section 959(b) complies with due

process because there is nothing unfair or arbitrary about holding Thompson accountable in the

United States for conspiring to use a U.S. registered or owned aircraft to traffic drugs.  Thompson's

due process challenge should be denied accordingly.[2]

---

[1]      The Court of Appeals for the Fifth Circuit also cited *United States v. Delgado-Garcia*, 374 F.3d 1337, 1347 (D.C. Cir. 2004), in which the Court of Appeals for the D.C. Circuit noted that a statutory provision stating that "[a]ny conveyance, including any vessel, vehicle, or aircraft, which has been used [to transport illegal immigrants] shall be seized" had extraterritorial application because conveyances transporting illegal aliens often travel internationally.

[2]      First, it is not clear that Thompson's due process challenge to Section 959(b) is viable. This Circuit has yet to decide "whether the Due Process Clause constrains the extraterritorial application of federal criminal laws."  *Ballestas*, 795 F.3d at 148 (declining to decide whether a

In determining whether an extraterritorial law comports with due process, the relevant inquiry is not of "nexus," but of notice.[3]  This Circuit in *United States v. Ali*, in rejecting the appellants' reliance on the law of personal jurisdiction in the due process context, noted that the "nexus requirement" simply "addresses the broader concern of ensuring that 'a United States court will assert jurisdiction over a defendant who should reasonably anticipate being haled into court in this country.'"  718 F.3d 929, 944 (D.C. Cir. 2013) (quoting *United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1257 (9th Cir. 1998)).  "What appears to be the animating principle governing the due process limits of extraterritorial jurisdiction is the idea that 'no man shall be held criminally responsible for conduct which he could not have reasonably understand to be proscribed.'" *Id.* (quoting *Bouie v. City of Columbia*, 378 U.S. 347, 351 (1964)).  The "ultimate question" under the Due Process Clause "is whether application of the statute to the defendant would be arbitrary or fundamentally unfair." *Id.* (quotations and alterations omitted).

There is nothing arbitrary or fundamentally unfair about holding Thompson responsible in the United States for conspiring to use a U.S. registered aircraft to traffic cocaine.  Thompson cannot reasonably claim that he did not know his conduct was illegal, as "drug trafficking is condemned universally by law-abiding nations." *United States v. Suerte*, 291 F.3d 366, 371 (5th

---

due process limitation exists on the extraterritorial application of the MDLEA, but holding that, even assuming such a limitation, the MDLEA did not run afoul of it).  Even assuming that the Due Process Clause imposes limits on the exterritorial application of federal criminal laws, we can determine that Section 959(b) comports with due process by looking to the law of this Circuit as well as other courts.

[3]      Thompson, in advancing a due process argument based on the notion of personal jurisdiction in the civil context, contends that the due process inquiry depends on "whether the defendant purposefully directed his conduct towards the United States."  ECF No. 120, n.2. However, Thompson recognizes that controlling precedent has rejected this argument. As this Circuit noted in *Ali*, "the law of personal jurisdiction is simply inapposite" to the question of whether there exists due process in the context of a federal criminal law with extraterritorial application. *United States v. Ali*, 718 F.3d 929, 944 (D.C. Cir. 2013).

Cir. 2002).  Nor can one who conspires to use a U.S. registered or owned plane to traffic drugs reasonably claim that he did not anticipate that such conduct would subject him to the laws of the United States.[4]  Due process in this context requires no more.  *United States v. Rojas*, No. 13-40998, 2016 WL 360774, at \*5 (5th Cir., Jan. 28, 2016); *Ali*, 718 F.3d at 944.  The only other court to the Government's knowledge to have addressed this issue likewise concluded that Section 959(b) does not violate due process.  *United States v. Malago*, No. 12-20031-CR, 2012 WL 3962901, at \*2-4 (S.D. Fla., Sept. 11, 2012) (addressing an argument identical to Thompson's and determining that Section 959(b) comports with due process); *see also Lawrence*, 727 F.3d at 395-96 (concluding that the first clause of Section 959(b) proscribing extraterritorial conduct by "any United States citizen on board any aircraft" does not violate due process).

Principles of international law support the conclusion that Section 959(b) satisfies due process.  Although courts must enforce the law "irrespective of whether the statute conforms to customary international law," *United States v. Carvajal*, 924 F.Supp.2d 219, 241 (D.D.C. 2013), courts often consult international law in determining whether an extraterritorial law comports with due process, *United States v. Ibarguen-Mosquera*, 634 F.3d 1370, 1378-79 (11th Cir. 2011).  "The law of nations permits the exercise of criminal jurisdiction by a nation under five general principles. They are the territorial, national, protective, universality, and passive personality principles."  *Lawrence*, 727 F.3d at 394 (quotation marks omitted).  "Under the protective theory . . . a country's legislature is competent to enact . . . [and] enforce criminal laws *wherever and by*

---

[4]     To be sure, it is the Government's burden to prove Thompson's guilt beyond a reasonable doubt at trial. Should the Government prove its case, then such a finding of guilt would necessarily support the conclusion that Thompson, by conspiring to use a U.S. registered or owned plane to traffic cocaine, "should [have] reasonably anticipate[d] being haled into court in this country."  *Ali*, 718 F.3d at 944 (quotation marks omitted).  For this reason, Thompson's arguments are premature and stray into the province of the jury's fact-finding function, as it is the jury's decision to determine whether Thompson is guilty of the charged conspiracy.

*whomever* the act is performed that threatens the country's security or directly interferes with its governmental operations." *United States v. Columba-Colella*, 604 F.2d 356, 358 (5th Circuit 1979) (emphasis added).   The court in *Lawrence*, in concluding that the first clause of Section 959(b) was justified by the protective principle, observed that "Congress has demonstrated, in enacting DAPCA and in ratifying various international conventions on the eradication of drug trafficking, that it considers the international drug trade to be a major threat to the safety of the United States."   727 F.3d at 395.   The protective principle justifies the application of Section 959(b) in the present case as well, as Section 959(b)'s prohibition on the use of U.S.-registered or owned aircraft to traffic narcotics recognizes the United States' strong national interest in preventing drug trafficking.

Trafficking of narcotics onboard a U.S. aircraft further adversely affects the United States' security and governmental operations because the United States has a compelling interest in ensuring that aircraft subject to its laws and regulations are not used to traffic drugs, regardless of the citizenship of the actors or the locations where the trafficking occurs.   Registering an aircraft in the United States invokes a host of maintenance and safety regulations that ensure that U.S. registered aircraft are some of the most reliable in the world.   The United States has a direct interest in prosecuting and deterring individuals who would take advantage of the benefits conferred by U.S. registration or ownership in order to traffic drugs.   This interest is reflected in DAPCA's statutory framework, which "Congress intended . . . to have a broad sweep in dealing with all aspects of drug abuse."   *Baker*, 609 F.2d at 137.

Thompson also contends that "international law and treaties do not provide global notice" of the charged offense.   First, as noted above, where Congress's intent is clear (as it is here), courts must enforce the law "irrespective of whether the statute conforms to customary international law,"

*United States v. Carvajal*, 924 F.Supp.2d 219, 241 (D.D.C. 2013).  For this reason, Thompson's attempts to hinge his due process argument on international law principles is flawed.  In any event, international law and treaties *do* in fact provide global notice of the charged offense, and support the United States' enactment of Section 959(b).  The United Nations Convention Against Illicit Traffic in Narcotic Drugs and Psychotropic Substances Article 4(1)(a), Dec. 20, 1988, 1582 U.N.T.S. 95, provides, "Each party shall take such measures as may be necessary to establish its jurisdiction over the [drug related] offenses . . . when (i) the offense is committed in its territory; or (ii) the offense is committed on board a vessel flying its flag *or an aircraft which is registered under its laws* at the time the offense is committed" (emphasis added).  The protective principle of international law supports the United States' compliance with this Convention by enacting laws like Section 959(b) to prevent drug traffickers from using aircraft that are subject to U.S. laws and protected by U.S. regulations.

Simply put, Thompson's contention that his alleged role in the conspiracy had no connection to the United States is incorrect.  Congress's intent to criminalize the use of U.S. registered or owned aircraft to traffic drugs is clear, and this intent comports both with the Due Process Clause of the Fifth Amendment as well as principles of international law.  There is nothing arbitrary or fundamentally unfair about haling into U.S. court an individual who conspires to use U.S. registered or owned aircraft to traffic cocaine.  The United States' interest in preventing drug trafficking with planes subject to its laws and regulations supports the application of Section 959(b) in the present case.

### III.    CONCLUSION

For the reasons set forth above, the Government respectfully requests that Thompson's

Motion to Dismiss the Indictment (ECF No. 120) be denied.

Respectfully submitted this 26th day of February, 2016.

> Arthur Wyatt, Chief
> Narcotic and Dangerous Drug Section
> Criminal Division
> U.S. Department of Justice
> Washington, DC 20530

By:     _____-s-_____
> Erin Cox
> Trial Attorney
> Narcotic and Dangerous Drug Section
> Criminal Division
> U.S. Department of Justice
> Washington, DC 20530
> 202-598-2771
> Erin.Cox@usdoj.gov

> and

By:     _____-s-_____
> Paul Joseph
> Trial Attorney
> Narcotic and Dangerous Drug Section
> Criminal Division
> U.S. Department of Justice
> Washington, DC 20530
> 202-514-9644
> Paul.Joseph2@usdov.gov

> and

By:     _____-s-_____
> Brian Sardelli
> Trial Attorney
> Narcotic and Dangerous Drug Section
> Criminal Division
> U.S. Department of Justice
> Washington, DC 20530

10

202-598-2950
Brian.Sardelli2@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was sent via the CM/ECF system, to counsel of record for the defendants, this 26th day of February 2016.

Arthur Wyatt, Chief
Narcotic and Dangerous Drug Section
Criminal Division
U.S. Department of Justice
Washington, DC 20530

By:   _____-s-_____

Erin Cox
Trial Attorney
Narcotic and Dangerous Drug Section
Criminal Division
U.S. Department of Justice
Washington, DC 20530
202-598-2771
Erin.Cox@usdoj.gov

and

By:   _____-s-_____

Paul Joseph
Trial Attorney
Narcotic and Dangerous Drug Section
Criminal Division
U.S. Department of Justice
Washington, DC 20530
202-514-9644
Paul.Joseph2@usdov.gov

and

By:   _____-s-_____

Brian Sardelli
Trial Attorney
Narcotic and Dangerous Drug Section
Criminal Division

11

U.S. Department of Justice
Washington, DC 20530
202-598-2950
Brian.Sardelli2@usdoj.gov